The inventions of the patents today, the 008 and the 564, are systems and methods using GPS receivers in a base station to track, that is, determine the location of freight containers, the big boxes you're all familiar with, in the densely packed environment of the freight yard, which required a type of accuracy that just plain old GPS didn't provide, certainly at the time, and so this was something rather noteworthy. The inventors found that the key was to use the location of the receivers, which were attached to the containers at two critical times. One, whenever a box or container was picked up, and then again when it was put down. And by inferring the location of the container from the receiver, which was attached, at those critical times, you could track and say, whenever you wanted, where your containers were, and put some additions to the base station, what was in those containers, etc. We're here today, it's done summary judgment, and summary judgment of literal infringement, based on what we contend was an erroneous claim construction of the term attaching or attached, and even if it wasn't an erroneous instruction, we're also here because there was summary judgment of no infringement under the doctrine of equivalence. So Mr. Maddox, you do not challenge summary judgment of no literal infringement under the district court's claim construction? That's correct. Okay. If I may begin with the claim construction. The parties below in the district court noted that no one said that attach was a term of art, meaning special meaning. The parties agreed the plain and ordinary meaning should control. And when you look to the plain and ordinary meaning of attach, when this court's looked to it in Southcote and other courts, in MBW and Royal Typewriter, and a number of other cases we've cited, every court to speak on the issue says, well, yes, the ordinary meaning of attach includes both direct and indirect attachment or connection. Even the dictionary definition that BIT gave us below says join or connect, among other definitions. We haven't seen a single case from BIT to the contrary about what the ordinary meaning of attach is. So what we have here is the district court that deviated from that ordinary meaning. And, of course, in claim construction, that can be proper if you have a case where the patentee acted as his or her own lexicographer. But no one claims that's the case here. It can also be proper if you have an express disavowal or disclaimer of the full scope of the ordinary meaning. But, again, no one claimed that happened here. There was a disavowal argument specific to vehicles that got rejected by the district court, and that was not appealed. So under many decisions of this court, that's the end of it. Can I just ask you to focus back on something that you said in your introduction, something that's obviously very much keyed to the accused products? Put aside the accused products for a moment. And just think about the patent and the written description. What in there focuses, as you described in – as you did in your introductory remarks, on the pick-up and drop-off times as opposed to any time there's a request for the location? Sure. For instance, I would refer you to column 6, lines 8 through about 15. This is from the second embodiment. And you can see there, actually, I'm starting on line 11, I guess. Additionally, or alternatively, the motion detector can initiate an operation when motion is detected, i.e. the movement of the container. The use of motion sensors to turn on and turn off. Right, but here, I guess, is what I'm – the reason for the question. So that indicates that one thing that this system is supposed to be able to do is send location information from the transceiver at pick-up and drop-off. But it's just one example, and indeed it says alternatively or whatnot. But the summary of the invention, the claims talk about intermittent sending of information. The summary of the invention talks about sending the information upon request. And I would think that that is an awfully strong reason to draw the conclusion in this context that the transceiver had better be actually on the container while it's sitting in the freight yard, not just for the ten minutes that the handling vehicle is moving it to the location – picking up from location one, moving it to location number two. Because you would not then be able to get location upon request from the transceiver. Okay, excuse me. Well, the term intermittent, of course, is defined in the patent. And certainly from the embodiments, we know that – That just means it's not constant, right? Right, that's how they define it. It's not just sending a ping every second or two seconds or something, right? Right. Maybe that would even be intermittent anyway. It's not constant. Yeah, exactly. It's not pinging every five minutes and so forth. So it seems to us that while it could be – well, perhaps I'm misunderstanding the question. The on-demand language you're referring to, you're saying this is in the claims? No, that's in the summary of the invention, isn't it? Right. On request. Right. So it could be done that way. Right. Just to be clear, the reason that I'm focusing on this is – Sure. Let me posit for purposes of this that the word attach might mean a number of different things, but it depends on the context. And so I'm trying to understand in the context of this patent, the major difference it seems to me that is made by whether the transceiver is on the container for long periods of time while the container is sitting in the freight yard or is in proximity of the container by virtue of being attached to the handling vehicle during the ten minutes that the handling vehicle is holding the container, is that in the former case, the transceiver can send real-time information about where the container is to a certainty upon request anytime you want it. The transceiver can send – Whereas the other system requires – gives you information that is historical the minute the handling vehicle drops the container off and moves away, which has a certain amount of reliability but is not the same as getting the information upon request. Right. And just to complete the picture, that context suggests to me that in here, in this patent, attach means actually on the container. I respectfully disagree. I think if the claim terms had basically elements of them that is in real-time on demand, that might be something. But we have specific embodiments that certainly don't operate that way. It's true that in the way you posit it in the system in these other embodiments, you would get the information of where the container is by going to the base station and say, well, where was it last put down? As opposed to the container being somewhere wherever it was last put down and having the receiver tell you where it is. It seems to me a distinction sort of without a difference in terms of the system and the method, which you're trying to do is you need to end up knowing where your containers are. But if I might direct you to Column 5, line 31. Bear with me a moment. This is from the first embodiment. You can see it says, a database and storage is connected to the CPU and the storage information such as freight yard layout, container, inventory, and present position of the remote unit or at least the last reported position. So it seems to us that the invention could include sort of or at least, as it says, the last reported position. If I may, I'm running into a bit of time. Oh, please do, yes. But we recognize that other panels of this judge, of this court, have held that the right meaning is something less than the ordinary meaning, even, frankly, in the absence of lexicography and express disclaimer. And some have called it implicit disclaimer and so forth. But we would point out that in none of these cases, and here I'm thinking most recently of ultimate pointer and Exxon and some others, you have sometimes passages in the specification that define the invention in terms of the narrower meaning. These have words like the invention is, the invention requires, or sometimes it's the important feature of the invention. We don't have any of that here. The invention is never said to be this thing including direct connection. Direct connection is never said to be an important feature. All we really have is the embodiment, which the inventor in the 08 patent at 4.16.18 made clear were illustrative. All we really have is you infer the location of the container from the location of the receiver. Now, BIT says, aha, well, that can't possibly work unless you're directly connected. BIT is ruling out all types of indirect connection as making it impossible to infer the location. We refer you to page 30 of our brief, the illustrations. A in that illustration is the receiver on top of the roof of the container. B, the receiver on the holding bar a foot away. C, on top of the roof of the CHE. The thing is, first of all, there's no actual evidence. It's just an attorney argument. But as a matter of common sense, if your system knew that the receiver was always going to be 12 inches or 2 feet to the left of the container because of how the vehicle is structured, the system would know that. There's no reason you can't infer that. And moreover, this court has held on several occasions that it doesn't amount to disclaimer if a particular structure makes it difficult to obtain the results you're talking about. That's not enough. And this court in decisioning.com, 527F1300, dealt with a similar argument. The claim term was verify the applicant's identity. The district court narrowed that to mean using certain information. The claim language itself didn't require any particular information. This court noted there's not much in the spec about how it would be done with other information but said no, no disclaimer. The other way in which this court has held to go with narrow construction is disparaging statements like, in this case, it would have to be indirect attachment is antiquated. It has inherent inadequacies. It's deficient. We have none of that here either. All we really have is ordinary meaning.  Yes, thank you. We'll save you a bit of time. Let's hear from the other side. Ms. Chang. Thank you, Your Honor. May it please the court. I'd like to start by responding to what Judge Toronto had raised and the issue of what appellant has identified as the critical feature of the invention is the pickup and drop off time and the exclusion of indirect infringement from the construction. I think it's helpful to understand what the district court rulings really were. Indirect attachment. So we can understand. Indirect attachment. Correct. And what you see is what they're arguing is they're challenging the court's exclusion of any indirect attachment from the scope of the claims. But what you see is there was no such broad exclusion in the district court's claim construction ruling. In addressing the attaching limitation, the district court said there were two questions it was answering. First was the question was, is there disavowal of claim scope? And it noted that the appellant was arguing there's no disavowal, that the scope of the attaching should broadly encompass both direct and indirect attachment. And on that question, the district court agreed with appellants. It found no disavowal. So there is no statement in the claim construction ruling, no finding, no ruling, that there is no indirect attachment at all in the scope of the term attaching. So that's not really the issue on appeal. The issue on appeal is the second question that the district court answered. And the second question is, is appellants' proposed construction to associate or connect with the plain and ordinary meaning of attached in the context of these patents? And if you frame it that way, that's what you see that the district court actually addressed in its claim construction order and in applying that claim construction in summary judgment. What it says is the plain and ordinary meaning of attached, as used in the specification, cannot cover merely associate or connect with. It may cover some indirect attachment, but not mere association or connection with. That it has to mean affix or fasten to. That can be affixed or fastened to the container directly or indirectly. You'll see in the reply brief there was some mention of what if there was a mount on the freight container and you mounted the GPS, that would be an excluded indirect attachment. And I don't think the district court's ruling excludes that sort of indirect attachment because that is still affixing to the freight container itself. So what we see on summary judgment is they didn't find no literal infringement because it excluded all indirect attachment. It restated its claim construction ruling, that it can't just be mere association or connection with, that it has to denote something more than an abstract or an attenuated link between two things. And that's what it found, that having a vehicle that has GPS in it move around containers for a short amount of time, that is too attenuated, whether you want to call it direct or indirect attachment. So if you frame it in that light, you will see that the district court did in fact properly apply this court's claim construction precedent and look at the intrinsic evidence, look at the specification, and see what in this context did it mean when it said attachment. And what you see is in the specification and in the district court's claim construction order, they went through the specification in some detail and talked about what it was the invention was about. And contrary to what appellants have represented here, it's noteworthy that there is no mention anywhere, if you look through the patents, anywhere of any vehicles or any container-handling equipment moving things around in the freight yard. It talks specifically about the freight containers, it being stored, it being stacked in sitting places, it sometimes being misplaced. So that was not the focus of the invention. Every time they talked about the receiver, they talked about it being on the freight container. And I won't rehash in detail, but we had highlighted in our responsive red brief at pages 20 and 22, the specifications disclosures that talk about, and specifically there is a disclosure that says the remote unit that has the receiver in it is designed for mounting on top of or on the sides of the freight container. And that's kind of the idea that the district court focused on in construing this in the context of this patent. Now there's no determination of how it's mounted on the top or the sides. It could be directly, it could be indirectly, but it has to be on and with that container. And if you see every time they talk about... I know that the question of literal infringement under the words affix or fasten to is not, in fact, before us. That has not been appealed. But why doesn't, as a practical matter, isn't this all about the length of time during which the transceiver is in physical communication with the container? Because it is fastened... Assuming that the handling vehicle is fastened to the container, which I hope is true for the time it's actually holding it and moving it around. The container is fastened to the handling vehicle, which is fastened to the transceiver. And it seems like there's a sort of a transitive property here that means that the transceiver is for that brief period fastened to the container. But that issue isn't in front of us. But it all seems to do with how long the physical connection is maintained. That is one way that it can be characterized. But I think it's a little broader than that. Because what we're talking about is a method of tracking freight containers in a freight yard. So you have to think about the context of this operation of a freight yard. And so in that respect, yes, it does sometimes relate to the amount of time. But the great majority of time, containers are just sitting stacked in these big stacks you can see in kind of the terminals. They're not associated with equipment. But it's still important to be able to track and know where those things are. But there are at least two ways to do that. One is ping the thing, and you actually find out unless somebody actually moved the transceiver. And the other is to say, oh, six weeks ago, we have a record. And goodness, we hope this thing wasn't moved in the interim without our knowing. Right, and one of the issues the patent says that it was trying to address is how do we identify misplaced or lost items? And if you're just relying on pickup and drop-off, you can't do that. Where is that? So that is... Apologize. Which patent are you looking at? The 008. So it is A83 in the appendix column 2. It talks about keeping track of where... Column 2, lines 52, keeping track of where a particular freight container is located is a daunting task considering the often dynamic nature of a freight container and repositioning cargo. I mean, the other point is, in addition to time, you think about taking their argument to the logical conclusion. Just because I'm a container handling equipment and I pick up a container, to say that the GPS receiver located inside a computer that's inside the operating... the driver side of the thing is now affixed to the container is like saying the steering wheel of the vehicle is now affixed to the container or the windshield is affixed to the container. Right, but taking things to a logical conclusion with a term like attached, which can, I think you agree, include certain forms of indirect attachment. It seems to me taking things to a logical conclusion is not appropriate to the task of claim construction. I agree. You can go a little far and pass the bounds, but I think the examples I'm giving you of a steering wheel or the windshield is exactly the same relationship as the GPS receiver to the freight container, right? Because we're talking about a physical box that's bolted into the driver area of the container handling equipment that's carrying a container versus a steering wheel that's bolted on to the vehicle that's attached to... that is carrying a container or a windshield that is part of the driver compartment that is carrying a container. So I think those things are exactly on par and I totally agree that when you take things to a logical conclusion and extend an analogy or extend something too far, it's not as helpful in the reasoning. But I think in here it's exactly analogous. Ms. Chang, let me ask you, if I might please, to switch focus a little bit. If one accepts the district court's claim construction and one accepts the ruling of the district court excluding certain paragraphs from the supplemental declaration of Dr. Ryan, what we're faced with in terms of the doctrine of equivalence issue is the original report of Dr. Ryan that has a rather conclusory paragraph in it and the other material that was in the record at that point. And of course you have to view that against our requirement that a patentee must provide particularized testimony in linking arguments in a DOE setting. Now, the appellant here relies significantly, I think in its brief, on our brilliant instruments case. And you have in there the declaration of Dr., I guess it was Dr. West. Now, that declaration seems to be not much more, I don't know, for want of a better word, I'll use the term effusive in terms of our requirements, than the one we have here from Dr. Ryan, yet the report of Dr. Ryan, not a declaration, because that's all we can deal with now. If, I guess to put it bluntly, if the report, if the declaration of Dr. West in brilliant instruments was good enough, why isn't the preliminary or the initial report of Dr. Ryan here not good enough? I'm sorry to be a little roundabout on that, but do you understand what I'm saying? No, no, I do understand what you're saying. And I think there's two reasons here. First, looking specifically at what the issue was being appealed on and discussed in brilliant instruments. The appellant in that case did not contest the sufficiency of the disclosure. The issue in that case was, they said, well, you can't even make a DOE argument on this claim limitation because it would vitiate the claim, the claim limitation. So what the court was really saying there is, no, in this circumstance, you have to look at what the accused equivalent is and make, and actually go through the analysis. So the real issue being appealed was the first part of the discussion was whether we shouldn't even touch DOE because it would be claim vitiation. So that was actually what the case was about. And then they went through, well, and so you've got to go through the DOE analysis. And then there was a statement, well, they had a function way result analysis. But that wasn't actually what the appellant was appealing. I think the other reason is, if you actually go and look at the district court record, and we cite it in our brief, is there was actually evidence kind of added as a citation at the end. And if you look at it, it was some experimental reports that were shown. You're saying the West declaration, the last sentence, are you referring to the last sentence of the West declaration? Yes. He has, you're correct, I think, in the appendix to that case, there was a sentence at the end of Dr. West's declaration that says, these properties are demonstrated by the testing results produced at exhibits three through seven of appendix G and et cetera. So what you're saying is that what's quoted in the brilliant case is not the entirety of the West declaration. And the West declaration in that case actually had reference to specific test results. And that sets it apart from what's here? I think what I'm saying is, first and foremost, what sets the brilliant instruments case apart is the issue actually being addressed was a claim vitiation issue and not a sufficiency of the disclosure on an insubstantiality of differences. But it does appear that when you look at the entirety of the West declaration, he did specifically refer to certain test results, which we don't have the equivalent of in Dr. Ryan's original report here. Correct. And then to the extent we actually do look at brilliant instruments to look at this function way result test, I think the record on appeal  a determination of sufficiency. The court there said it was in passing, but not. What about the various statements, though? And correct me if I'm wrong. I think they were statements from the defendant company and various items which talk about how the Shays work. You're familiar with all those various statements in the appendix. Yes. Can't those be used as kind of a supplement to, if you will, buttress or bolster up a bit Dr. Ryan's original report? Sure. So I think the real question is you have to ask what that evidence is relevant to. And I think the thing that our Federal Circuit precedent says is that you have to have particularized testimony and linking argument as to the insubstantial differences, or the equivalency of. And what that evidence actually points to is talking about exactly just what the accused feature does. But there is no evidence about equivalency. There's no comparison. There's no comparison. And actually, that's what you actually find in Mr. Ryan's report also. He'll talk about, here's in a parenthetical, in a conclusory fashion, here's what I think the function way result is. But there's no actual evidence or testimony by him or anyone else that is of ordinary skill in the art, and that's what the precedent requires, of saying how that is equivalent to what is done in the claims and what is being claimed. So that is primarily what is missing. It is just a conclusion. And there is a case that we didn't cite in our brief that is pretty analogous to this situation. It's Malta versus Shulmuric-Carolines, 952 F. Second, 1320. That's 952 F. Second? 1320. And there, it was a jury trial where the expert actually talked about and testified in some detail as to what it says the function way result of the accused equivalent is. But that's where the testimony stopped. So what the federal circuit said was, what this court said was, well, certainly there was testimony as to function way result. But what was less lacking is why the overall function way result that was identified, why that substantially is the same as what was claimed in the patent, and why the particular features and the particular things that were identified is the same to one of ordinary skill in the art. And that's what we have missing here as well. Any more questions? Thank you, Ms. Channing. Thank you. A couple things. We're hearing now that a fix or fasten, which was the district court's claim construction, does allow some indirect attachment, but just not this kind of indirect attachment. That's not what we understood, and that's not how the judge applied it in summary judgment. As for our claim construction being an abstract association, the district court knew exactly what was going on. The district court said, at 8th in the record, plaintiff argues that the scope of the word attached should broadly encompass both direct and indirect attachments. Proposed claim construction of connect or associate was exactly that. It all had to be a connection, a physical connection. With respect to your questions, Judge Toronto, from the summary of the invention, I see you were referring to column 3, 17 or 18 through 20. Upon request, I would direct your attention respectfully to column 3, lines 6 through 11 and column 3, lines 23 through 25. These are describing the system that has, you know where it ends, therefore you know where it is, you ask your base. Yes, there is a reference that it could also be you can ping them whenever you want, but these are two different approaches that are both within the invention. With respect to length of time, we don't see that length of time is part of anything in the spec or the claims. It has to do with can you track these, do you know where they are, and you can do that by knowing where you put them. There was perhaps some comment from the bench, some skepticism as to how this works, and we point out that page 43 of our opening brief, we quote the now folks, the IT folks, when describing their product, by directly tracking container handling equipment activity, we extrapolate the container and chance the location. Containers can only be moved by CHE or UTR, so tracking them with a GPS is how we know where they are. I agree that if you were relying on a year and a half ago, this container was in that corner, yes, it does seem distressed. A strange way to do it, but it is the way of the invention, it's the way, frankly, that the defendants are doing it. Any further questions? Thank you. The case is taken under submission.